1
2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

3

4

UNITED STATES OF AMERICA      *    4:18-CR-457-1
                              *
V.                            *    2:03 p.m. to 2:31 p.m.
                              *
JAMES ROBERT TUMLINSON        *    MARCH 11, 2019

5

6

7

**HEARING ON MOTIONS**
**BEFORE THE HONORABLE KEITH P. ELLISON**
**Volume 1 of 1 Volume**

8

9  **APPEARANCES**

10  **FOR THE UNITED STATES OF AMERICA:**
Ms. Sherri Zack
11  United States Attorney's Office
1000 Louisiana
12  Suite 2300
Houston, Texas 77002
13  (713) 567-9000

14  **FOR THE DEFENDANT, JAMES ROBERT TUMLINSON:**
Mr. Chad Wayne Etheridge
15  Attorney at Law
5111 Center Street
16  Houston, Texas 77007
(713) 869-1155
17

**ALSO IN ATTENDANCE:**
18  Mr. James Robert Tumlinson

19  Court Reporter:
Laura Wells, RPR, RMR, CRR
20  515 Rusk, Suite 8004
Houston, Texas 77002
21

Proceedings recorded by mechanical stenography.
22  Transcript produced by computer-assisted transcription.

23

24

25

*Laura Wells, CRR, RDR*

**PROCEEDINGS**

1

2          THE COURT:  We'll turn to United States v. James

3    Robert Tumlinson.  We will take appearances of counsel,

4    beginning with the government.

02:03:24  5          MS. ZACK:  Sherri Zack on behalf of the United

6    States, Your Honor.  Good afternoon.

7          MR. ETHERIDGE:  Chad Etheridge on behalf of the

8    defendant.

9          THE COURT:  Thank you.

02:03:37 10       Good afternoon, sir.

11          THE DEFENDANT:  Good afternoon.

12          THE COURT:  Mr. Tumlinson, you do not need

13    interpretation, do you?

14          THE DEFENDANT:  No, sir.

02:03:45 15          THE COURT:  Okay.  I thought we would hear the

16    evidence first before we do anything else.  No?

17          MS. ZACK:  Whatever works for Your Honor, if

18    there is any specific area, if Your Honor wants to narrow

19    anything down, if you have any specific -- if there is any

02:03:59 20    portion of it at this point that you want to dispense with

21    or something you are focusing on.

22          THE COURT:  Well, let's talk about that.

23    Mr. Etheridge, can we refine the issue a bit here?  Do you

24    want to talk about one of the -- one of the warrants, but

02:04:15 25    not all of them?

*Laura Wells, CRR, RDR*

```
 1          MR. ETHERIDGE:  Your Honor --

 2          THE COURT:  (addressing defendant)  Sir, you can

 3   sit down for now.  You may sit down.

 4          MR. ETHERIDGE:  The two state warrants, Your

 5   Honor, give the Court a global historical reference of

 6   what the substantive issues of when the case began --

 7          THE COURT:  Why don't you come forward.  I'm

 8   having a little trouble hearing you.

 9          MR. ETHERIDGE:  Yes, Your Honor.  Your Honor, I

10   think it's important, even though this is a federal case,

11   that the case began as a state --

12          THE COURT:  I understand that.

13          MR. ETHERIDGE:  Yes, Your Honor.  What we're

14   arguing is that some of the facts that were put in the

15   probable cause affidavit to -- that were submitted to the

16   federal magistrate were erroneous or inaccurate.  And

17   that's what we are arguing.

18          THE COURT:  That's what you want to focus on is

19   the inaccuracies?

20          MR. ETHERIDGE:  Yes, Your Honor.

21          THE COURT:  And whether the good-faith exception

22   applies?

23          MR. ETHERIDGE:  Yes, Your Honor.

24          MS. ZACK:  Okay.  And as far as I can tell, from

25   the reading of defense counsel's motion, the only
```

02:04:24
02:04:45
02:04:56
02:05:12
02:05:19

*Laura Wells, CRR, RDR*

4

1    inaccuracy is that the officer that applied for the

2    federal search warrant put in there that there was a March

3    13th state warrant, which there was, and did not discuss

4    the one on February 28th.

02:05:46   5    So it's not -- the information itself is not

6    inaccurate.  It just doesn't say it was two state search

7    warrants.  It says there was one.  And either way, that

8    one state warrant, the one on March 13th, was what covered

9    the items taken to the RCFL by the state agents.  And then

02:06:08  10    all of those -- that, the residential search and the state

11    search, is what led to the federal search.

12    So when Mr. Etheridge discusses inaccuracies, the only

13    inaccuracy is the fact that it doesn't say that there were

14    two state warrants.  It just says one.  But it covers all

02:06:30  15    the same information.  I don't know what other

16    inaccuracies --

17            THE COURT:  There are?

18            MS. ZACK:  -- there are factually.  I mean, a

19    warrant -- all a warrant has to do is lay out probable

02:06:44  20    cause for the magistrate.  It does not have to include

21    every single fact and circumstance known to law

22    enforcement at the time that the warrant is applied for.

23    It just has to have enough to establish probable cause.

24    And I know Your Honor is totally aware of that.  If

02:07:00  25    the agents put in everything they knew every time they did

1    a warrant, the magistrates would never have five minutes.

2    I mean, all they would be doing is reading 50-page

3    warrants.

4             THE COURT:  Okay.  Do you want to respond?

02:07:12    5             MR. ETHERIDGE:  Your Honor, that is true.  But we

6    believe that the sheriff's office misled the federal law

7    enforcement agency from the point of view if the federal

8    officer had access to the underlying warrant and the

9    affidavit, a lot of questions would arise at that point.

02:07:32   10    Some of it is -- again, the underlying warrant that

11    actually seized the items were based on a continuous

12    sexual abuse.  And the warrants in which we're fighting

13    over on the state side is -- there is not enough probable

14    cause to connect the two.

02:07:49   15        And that being said, if the federal officer is

16    conducting an investigation or talking to the sheriff's

17    office, he would have learned that the items were already

18    viewed.  That's why at that point they realized they

19    needed to get a second warrant.  So those --

02:08:05   20             THE COURT:  This is an important point.  I'm not

21    sure I'm following you.  They had -- they were aware of

22    the conduct that was alleged.  They went and got a warrant

23    based on that, right?

24             MR. ETHERIDGE:  Yes, Your Honor.

02:08:17   25             MS. ZACK:  That's the February 28th warrant for

1     the residence.

2               THE COURT:  Nothing inaccurate about that, right?

3               MR. ETHERIDGE:  We're fighting the probable cause

4     in regards to the electronical part of it, Your Honor.

02:08:27     5     The underlying case is a continuous sexual abuse.  The

6     magistrate signed what we would consider a broad warrant,

7     and we have already had an informal hearing with the state

8     judge.  He has indicated he is going to suppress all the

9     electronical stuff on the state side.

02:08:42    10         At that point the items were seized, the sheriff's

11    office looked at the electronical stuff, the data,

12    realized we need a second warrant, based on *U.S. v. Riley;*

13    and that's what I argued on the state side.  And at that

14    point, the -- the sheriff's office created offense reports

02:09:05    15    talking about what they did between the first warrant and

16    the second warrant.

17        But when you look at the affidavit to get the second

18    warrant, they regurgitated the same facts.  So, i.e.,

19    that's kind of where we are at right now.  If the federal

02:09:19    20    officer knew about the first warrant, he would've looked

21    at it and compared it to the second warrant and then

22    realized that something is not right, at least go back to

23    the sheriff's office and say, hey, we need further

24    investigation or do his own investigation.

02:09:31    25        So I think the sheriff's office misled the federal

*Laura Wells, CRR, RDR*

1    officer in just only telling them about the second

2    warrant.

3              THE COURT:  Did -- the misleading was not

4    mentioning the first warrant?

5              MR. ETHERIDGE:  Yes, Your Honor.  Or the

6    subsequent actions by the sheriff's department because

7    that's where -- it's our contention or the defense's

8    contention -- the fruit of the poisonous tree issue comes

9    in when the sheriff's office looked at the items without a

10   second warrant.

11             MS. ZACK:  Your Honor, maybe I can clarify this.

12   There was a child that made an outcry.

13             THE COURT:  Yeah.

14             MS. ZACK:  Based on that outcry, there was a

15   warrant issued for the defendant's residence.

16             THE COURT:  Right.

17             MS. ZACK:  That warrant specifically asked for

18   electronic devices, believing that evidence of the

19   molestation could be found on those devices as well as in

20   the home itself.  And there does not have to be an

21   allegation of child pornography to look for digital

22   evidence of the molestation, which does qualify as child

23   pornography.

24        The fact is that that magistrate reviewed it and

25   believed, based on those facts and circumstances, whether

*Laura Wells, CRR, RDR*

1    it was going to be child pornography or even the defendant

2    talking with the third party that viewed the molestation

3    about bringing the kids, being in the car, whatever it may

4    be, that magistrate believed and had a practical

02:11:16    5    application of the facts to the idea that in this day and

6    age, shocking, there could be things on a cell phone, a

7    computer, a USB drive.

8         This is the way people live their lives today.  No one

9    lives outside of their electronic devices, I mean, unless

02:11:36    10    you are the type of person that lives completely off the

11    grid.  Everyone is completely attached, even if it's just

12    to a cell phone.

13              MR. ETHERIDGE:  Your Honor.

14              MS. ZACK:  And the magistrate that reviewed the

02:11:48    15    residential warrant said you can take these devices.

16    After those devices -- and search them.  After those

17    devices were taken, the sheriff's department did a

18    preview.  They saw some child pornography.  They issued

19    arrest warrants for the defendant for the molestation,

02:12:10    20    which I believe is continuous sexual assault of a child on

21    the state level, and some child pornography charges.  They

22    had not reviewed everything yet.  That's why they took

23    everything to the RCFL, the FBI lab, after they got a

24    second state search warrant.

02:12:28    25         At this point, the federal government had not been

1  called.  The federal agent was not involved at all.  The

2  only federal nexus at that point was that San Jacinto

3  County asked for the FBI lab to process electronic devices

4  based on their second warrant, March 13th.

02:12:51  5  I would agree with defense counsel that the March 13th

6  warrant does not mention whether the San Jacinto Sheriff's

7  Office previewed those items, but the federal agent had

8  nothing to do with that.  They had not been called --

9  nothing -- there had been no review of anything by any

02:13:15  10  federal agency.

11  We're not saying that we believe the March 13th

12  warrant issued by San Jacinto County is deficient.  I

13  don't believe it is deficient.  It said we would like to

14  now look for evidence of promotion of child pornography or

02:13:32  15  whatever they call production at the state level; and the

16  Judge, based on those same facts and circumstances,

17  granted them the additional permission, which I don't even

18  believe after reading the first warrant was necessary, for

19  them to now look for that.

02:13:48  20  So then with that permission they take everything over

21  to the RCFL.  And on March 19th, it's all submitted to the

22  FBI's lab for review.  At this point, no federal officer

23  has been called to investigate this case.

24  CFE, computer forensic examiner, Russell Ackley starts

02:14:14  25  processing this stuff.  He sees two different things.  He

1    sees what we will call regular child pornography, meaning

2    the types of images --

3              THE COURT:  That circulates.

4              MS. ZACK:  Yeah.  The stuff that's been in

02:14:24    5    circulation.

6              THE COURT:  Yeah.

7              MS. ZACK:  And then he sees what he believes to

8    be homemade child pornography produced --

9              THE COURT:  Of the children who were the victims

02:14:34   10    of the --

11             MS. ZACK:  Correct.  But he doesn't know who or

12    what.  He just knows this is different.  This is not that.

13    And he calls San Jacinto County.

14        They contact Special Agent Robert Guerra, and he and

02:14:49   15    Russell Ackley, the CFE, talk about I have seen some

16    regular child pornography and what I believe is produced.

17    Russell Ackley describes those images to Special Agent

18    Guerra, who is meeting with the San Jacinto County people.

19    He goes over all of that, and he applies to Judge Stacy

02:15:14   20    for a federal search warrant.

21        He was not involved -- he being Robert Guerra -- was

22    not involved in any of the investigation of the

23    molestation.  He only became involved after March 19th,

24    after the first two state warrants were issued.

02:15:38   25        And based on the information he was provided from CFE

*Laura Wells, CRR, RDR*

1    Ackley and then talking with San Jacinto County, he

2    applies for the federal search warrant.  And he did not

3    sit down and review the state search warrants.  And it

4    seems like from defense counsel's argument that somehow

02:16:01    5    there is some burden on the federal agent to review state

6    search warrants and make some type of probable cause

7    determination.

8        He was told we had two search warrants.  This is what

9    we found.  We think you have a federal case.  And he

02:16:18    10   applied, based on the information that was given to him,

11   for a federal search warrant.

12       So even if Mr. Etheridge is correct and he was somehow

13   misled about something, he acted in good faith.

14           THE COURT:  Yeah.  Okay.  Let's go back to Mr. --

02:16:34    15   I think I understand your position.

16       Mr. Etheridge.

17           MR. ETHERIDGE:  Your Honor, there are -- there is

18   a good-faith exception, but then there are times when the

19   good-faith exception cannot be relied on.

02:16:46    20       And some of that is, in *U.S. v. Leon,* an exception is

21   not available to an officer who relies on a warrant based

22   on an affidavit so lacking probable cause as to render

23   belief in its existence entirely unreasonable.

24       And that -- and that's why it's important that the

02:17:01    25   federal officer is going to look at the search warrant to

1    sometimes go to the underlying agency --

2         (Clock chiming.)

3         THE COURT:  Let me get this off.  Just a second.

4    Due to the change in time -- okay.  Go ahead.

02:17:22    5         MR. ETHERIDGE:  So -- and that's why I think it's

6    important.  I'm not asking for the federal agent to make a

7    determination whether there is probable cause or not; but

8    if he is going to take over the investigation, as the

9    state is saying which happened around April, at some point

02:17:34    10   he has to do due diligence to go and talk to the

11   underlying agencies.

12        THE COURT:  Okay.

13        MS. ZACK:  He didn't take --

14        THE COURT:  Just a second.  Just a second.  What

02:17:41    15   you are arguing, it seems to me, is not evidentiary.  It's

16   just an issue of law.  So I'm not sure we need

17   presentation of evidence.

18        MR. ETHERIDGE:  I agree with that, Your Honor.

19        THE COURT:  Well, you should have let me know

02:17:53    20   that.  I thought we were going to have an evidentiary

21   hearing today.

22        MS. ZACK:  Well, I was prepared for that, Your

23   Honor, but I did not necessarily believe that is the case.

24   But if Your Honor had any questions, that's why I asked if

02:18:03    25   there were any specific issues.

1       As to this taking over the investigation, the federal

2  agent didn't take over any investigation.  San Jacinto

3  County is still handling the continuous sexual abuse of a

4  child charge and all of that.  That is their case.  He is

02:18:26   5  charged in that county with a whole bunch of stuff.

6            THE COURT:  Okay.  That's their proceeding.

7            MS. ZACK:  So the idea that somehow this agent is

8  supposed to review everything they have done, what the

9  agent knew and what is uncontested is that two warrants

02:18:47  10  were issued.  Those warrants were executed.  And when he

11  got the case and he saw and had described to him three

12  regular images of child pornography and two images of the

13  children at question in this case, he then did what he is

14  supposed to do and applied for a federal search warrant.

02:19:10  15  There is no --

16            THE COURT:  I understand that.

17            MS. ZACK:  -- bad faith, and I don't believe

18  there was any bad faith on the part of the San Jacinto

19  people.

02:19:20  20       Defense counsel suggests that because they got arrest

21  warrants before the second search warrants that something

22  nefarious happened.  An arrest warrant is a probable cause

23  determination.  We arrest people all the time on criminal

24  complaints in the federal system --

02:19:35  25            THE COURT:  I understand that.

1        MS. ZACK:  -- and have 30 days to indict them.

2   And we may not have fleshed out enough of it at the time

3   of the arrest.  We just know we need to make the arrest

4   then.

02:19:44   5        THE COURT:  I know that.  I understand.

6        MS. ZACK:  So I'm not sure where this act is or

7   action is that excludes this Court from applying the

8   good-faith exception to the warrant rule.  And I have

9   tried to figure that out, based on counsel's filing.

02:20:02  10        THE COURT:  Why do we even get to the good-faith

11  basis?  Just because there is that one error in terms of

12  the date?

13        MS. ZACK:  Well, I don't think we do need to get

14  there.  I think that that error does not negate the

02:20:14  15  probable cause.

16        THE COURT:  No.  I don't think so either.  I

17  don't think it negates the entire affidavit.

18        MS. ZACK:  Right.  So, no.  As Your Honor read in

19  our motion, we believe there was probable cause for the

02:20:22  20  warrant, and we put that part first.

21      Then we said even if there was misinformation or

22  something wrong, Special Agent Guerra acted in good faith,

23  and the people that reviewed this on the federal level

24  were acting in a good-faith reliance on a detailed warrant

02:20:39  25  submitted and signed off on by a magistrate.

*Laura Wells, CRR, RDR*

1        THE COURT:  I think I understand your position.

2    Mr. Etheridge, do you want to call any witnesses?

3        MR. ETHERIDGE:  No, Your Honor.

4        THE COURT:  I'm really struggling to see what was

02:20:50   5 deficient about the federal warrant.  It seems to me the

6 federal warrant probably could have issued from the time

7 they found the children who told their story.  I think

8 without anything else the federal warrant could have

9 issued.  So it's hard to see that in the interim, with

02:21:08  10 more evidence having been accumulated, that that somehow

11 voided the initial probable cause.

12    The circumstance, generally, is tragic with multiple

13 victims, victims we know the identities of, and many of

14 whom's identity we'll never know.  It's a tragic case.

02:21:33  15 These are my least favorite kinds of criminal proceedings,

16 but I don't think there was a procedural defect in what

17 the federal government did.

18    I mean, wouldn't you have signed a warrant given this

19 information in front of you?

02:21:50  20        MR. ETHERIDGE:  Your Honor, I think we have to

21 separate the continuous and I disagree with the state's

22 argument that continuous sexual abuse equates to child

23 pornography.  There are two different sets of elements.

24    And I'm not saying it can't happen; but as I argued in

02:22:05  25 the state court, there has to be a nexus between what the

*Laura Wells, CRR, RDR*

1   warrant is asking for here, i.e., there is a lot of items

2   on the state side that are good, like panties, anything

3   that would be relatable to a sexual assault.

4        And then, where we argued that once it got to the

02:22:25   5   electronical equipment, there was nothing in the

6   affidavit, no nexus to connect those facts to that charge.

7   And originally there was nothing to be said about any

8   possession or any videos.

9        It wasn't until the sheriff's office reviewed it that

02:22:39   10   a second warrant that became, I believe, under *U.S. v.*

11   *Riley,* the right to review electronical data that they

12   realized, oh, okay, we have more here.  At that point, I

13   think that's where the taint began.  And that's why our

14   position is that I believe San Jacinto never told --

02:22:56   15        THE COURT:  You don't think the fact that there

16   were these actions taken by Mr. Tumlinson allegedly toward

17   his young family members would have been sufficient to

18   search his premises for digital information about child

19   pornography?  I would have thought that by itself would be

02:23:23   20   enough.

21        MR. ETHERIDGE:  No, Your Honor.  Based on -- it

22   could be, but not in this particular case.

23        THE COURT:  I know there is no guarantee you'll

24   find child pornography when you find a child molester, but

02:23:36   25   it satisfies probable cause, doesn't it?

1        MR. ETHERIDGE:  Well, I would say 99 percent of

2    the time it could.  But again, in this case -- and that's

3    why I think the state neglected -- not the federal but the

4    sheriff's department never told the FBI agent because when

02:23:51    5    you are looking at the affidavit, it was a very deficient

6    affidavit.

7        Was it enough for probable cause for items such as

8    panties and linens?  Yes.  I didn't ask the state court to

9    suppress any of those items.

02:24:04    10        But there was nothing in the affidavit where the kid

11    said, hey, he made me watch this or he recorded me.  There

12    was no nexus.

13        Because if that's the case, then what would happen is

14    any time a warrant is issued then we could always stretch

02:24:19    15    it to another crime.  It wasn't until later on that the --

16    when the sheriff's office reviewed it and was like, oh, we

17    have more here.

18        And at that point, I think they realized we messed up

19    because we looked at it without a second warrant.  And

02:24:33    20    I'll explain to you why, Your Honor.  If the sheriff's

21    department truly believed they had a right to review the

22    contents, they would have put the language in the second

23    warrant talking about we have seen all these videos.  But

24    they did not.  And that would be a slam dunk.

02:24:50    25        If you look at the second warrant, they never -- the

1    affidavit never discusses about any child pornography,

2    reviewing it, we have had a right to review it, this is

3    what we found, and we need a second warrant.  They just

4    regurgitated the same facts from the first warrant into

02:25:06    5    the second warrant and just put a different charge.

6          And that's why the state court has indicated he was

7    going to suppress it because there was no nexus.  Even

8    if -- and the state judge said, Even if there was just one

9    sentence that says he made us watch something bad, he

02:25:21    10   said, I would deny your motion.  But there is nothing

11   there.

12         I think that's why when Special Agent Guerra got

13   involved -- and we can sit here and dispute whether we

14   think the sheriff's office misled him intentionally, but

02:25:37    15   that's what I think happened here.  I think they realized

16   we messed up or at least on this part of the case and has

17   nothing to do with the sexual assault part.  I mean, they

18   are good to go.  They have got beaucoup of evidence on

19   that side.  They are going to try that part of the case.

02:25:51    20         But when it comes down to these electronic thumb

21   drives and computers and such, it was both warrants were

22   very deficient.

23              THE COURT:  And they were deficient why?

24              MR. ETHERIDGE:  Because there was no nexus.

02:26:04    25   There was no --

1          THE COURT:  A nexus between the conduct and the

2    images?

3          MR. ETHERIDGE:  Yes, Your Honor.

4          MS. ZACK:  May I respond to that, Your Honor?

02:26:10   5          THE COURT:  Yes.

6          MS. ZACK:  Two things.  Looking at *Illinois v.*

7    *Gates*, when a magistrate makes a decision, there has to be

8    a practical, common-sense decision, given all the

9    circumstances set forth in the affidavit before him or

02:26:31  10    her, including the veracity and basis of knowledge of the

11    person supplying the information and that there is a fair

12    probability that contraband or evidence of a crime will be

13    found in a particular place.

14       We know that standard.  It's an objective one, and it

02:26:47  15    renders the officer's subjective motivation irrelevant.

16    So even if Your Honor believed that San Jacinto County

17    somehow had some kind of misguided effort or did something

18    wrong in their second warrant, then it wouldn't matter

19    because it's an objective standard.

02:27:10  20       And under the Fifth Circuit cases, *U.S. v. Flanders*,

21    which cites *U.S. v. Froman* -- and *Flanders* is at 468 F.3d

22    269.

23          THE COURT:  Spell Froman.

24          MS. ZACK:  Well, Flanders is F-l-a-n-d-e-r-s.

02:27:29  25    Froman is F-r-o-m-a-n.  And that's at 355 F.3d 882, and

1  that's from 2004.

2      An affidavit supporting a search warrant for child

3  pornography does not need to show specific individualized

4  information that a defendant possesses child pornography.

02:27:48  5      The case law says that there was nothing wrong with

6  those warrants, the state warrants or the federal warrant,

7  under Fifth Circuit and US Supreme Court law.

8      So I certainly sympathize with the defendant's

9  position.  I mean, he has got to do the best he can for

02:28:06  10  his client.  But according to the case law, you don't have

11  to know that you are going to find child pornography.  You

12  can reasonably assume that if this individual is molesting

13  children, they have a sexual interest in children, and

14  there is a probability -- because that's all there has to

02:28:26  15  be, that child pornography will be found.  And that was

16  the case here.  And it was found.  And now we're here,

17  Your Honor.

18      MR. ETHERIDGE:  And, Your Honor, to rebut that,

19  in *U.S. v. Woerner*, W-o-e-r-n-e-r, 709 F.3d 527, which is

02:28:48  20  a Fifth Circuit 2013, Your Honor, they have indicated four

21  situations in which a good faith --

22      THE COURT:  Slow down a little bit.  They have

23  indicated what now?

24      MR. ETHERIDGE:  Your Honor, under the *Woerner*

02:29:00  25  case, Your Honor, the Court has identified four situations

1    where the good-faith exception does not apply.

2        One, when the issuing magistrate was misled by

3    information in an affidavit that they filed knew or

4    reasonably should have known was false.  I believe that

02:29:15  5    might be applicable to this case.

6            THE COURT:  Well, hold on.  We don't have any

7    evidence he knew that to be false.

8            MR. ETHERIDGE:  Well, I guess not that he did

9    know it to be false; but if he actually had read the

02:29:24  10   second warrant, the one he listed, it clearly states it

11   was a second warrant, which in the affidavit --

12           THE COURT:  But how does that -- how does that

13   intrude on any of the Fourth Amendment protections that we

14   strive to protect?  How is that offensive to the values of

02:29:42  15   the Fourth Amendment?

16           MR. ETHERIDGE:  Well, Your Honor, because I think

17   at that point Special Agent Guerra, if given a second

18   warrant and was told it was a first, then he would -- I

19   would guess during his investigation, he would call the

02:29:55  20   sheriff's office and say, hey, what do we have going on

21   here?  What is the situation?  And then at some point

22   realize there might be more going on.

23       And here, what I'm asking the Court to do is punish

24   the sheriff's office for what I believe is a violation of

02:30:09  25   my client's Fourth Amendment rights.  And not so much that

1   I believe that the federal officer did anything wrong,

2   besides just maybe not reading the warrant and asking --

3   doing due diligence, but there are -- under *Woerner* the

4   Court's decision is there are factors where we can

02:30:30  5   overcome the good-faith exception.  And here I think it

6   meets that.  I think at some point the sheriff's office

7   realized they messed up.

8         THE COURT:  Anything else from anybody?

9         MS. ZACK:  No, Your Honor.

02:30:44  10         MR. ETHERIDGE:  No, Your Honor.

11         THE COURT:  I'm afraid I'm going to have to deny

12   your motion.  You certainly gave it the very best effort

13   you could, and you made the best arguments anybody could

14   have on behalf of your client.  It is overruled.

02:30:53  15         MS. ZACK:  Your Honor, could we possibly handle

16   the pretrial conference today rather than coming back on

17   Thursday?  Because I think in light of Your Honor's

18   ruling, defense counsel is going to have to get with his

19   client and we may be able to work this out without a trial

02:31:12  20   but we're going to need some time to do that.

21         THE COURT:  What would we cover in a pretrial

22   conference?

23         MS. ZACK:  Nothing.  But we're set for Thursday

24   for a pretrial conference.

02:31:24  25         THE COURT:  We can cancel that.

1        MS. ZACK:  Okay.  That would be great.  That way

2    we all don't have to come back and bother Your Honor and

3    then --

4        THE MARSHAL:  All rise.

02:31:30    5        THE COURT:  Go ahead.  Is there something else,

6    Ms. Zack?

7        MS. ZACK:  No.  No.  We're good.  Thank you so

8    much, Your Honor.

9        (Proceedings concluded at 2:31 p.m.)

10   *Date: March 18, 2019*

11                   **COURT REPORTER'S CERTIFICATE**

12       *I, Laura Wells, certify that the foregoing is a*

13   *correct transcript from the record of proceedings in the*

14   *above-entitled matter.*

15

16                   *____/s/ Laura Wells_____*

17                   *Laura Wells, CRR, RMR*

18

19

20

21

22

23

24

25

Concordance

## /

**/s** [1] - 23:16

## 1

**13th** [5] - 4:3, 4:8, 9:4, 9:5, 9:11
**18** [1] - 23:10
**19th** [2] - 9:21, 10:23

## 2

**2004** [1] - 20:1
**2013** [1] - 20:20
**2019** [1] - 23:10
**269** [1] - 19:22
**28th** [2] - 4:4, 5:25
**2:31** [1] - 23:9

## 3

**30** [1] - 14:1
**355** [1] - 19:25

## 4

**468** [1] - 19:21

## 5

**50-page** [1] - 5:2
**527** [1] - 20:19

## 7

**709** [1] - 20:19

## 8

**882** [1] - 19:25

## 9

**99** [1] - 17:1

## A

**able** [1] - 22:19
**above-entitled** [1] - 23:14
**abuse** [4] - 5:12, 6:5, 13:3, 15:22
**access** [1] - 5:8
**according** [1] - 20:10
**accumulated** [1] - 15:10
**Ackley** [4] - 9:24, 10:15, 10:17, 11:1
**act** [1] - 14:6
**acted** [2] - 11:13, 14:22
**acting** [1] - 14:24
**action** [1] - 14:7
**actions** [2] - 7:6, 16:16
**additional** [1] - 9:17
**affidavit** [13] - 5:9, 6:17, 11:22, 14:17,

16:6, 17:5, 17:6, 17:10, 18:1, 19:9, 20:2, 21:3, 21:11
**afraid** [1] - 22:11
**age** [1] - 8:6
**agencies** [1] - 12:11
**agency** [3] - 5:7, 9:10, 12:1
**Agent** [5] - 10:14, 10:17, 14:22, 18:12, 21:17
**agent** [8] - 9:1, 9:7, 11:5, 12:6, 13:2, 13:7, 13:9, 17:4
**agents** [2] - 4:9, 4:25
**agree** [2] - 9:5, 12:18
**ahead** [2] - 12:4, 23:5
**allegation** [1] - 7:21
**alleged** [1] - 5:22
**allegedly** [1] - 16:16
**Amendment** [3] - 21:13, 21:15, 21:25
**applicable** [1] - 21:5
**application** [1] - 8:5
**applied** [4] - 4:1, 4:22, 11:10, 13:14
**applies** [2] - 10:19, 11:2
**apply** [1] - 21:1
**applying** [1] - 14:7
**April** [1] - 12:9
**argued** [3] - 6:13, 15:24, 16:4
**arguing** [1] - 12:15
**argument** [2] - 11:4, 15:22
**arguments** [1] - 22:13
**arise** [1] - 5:9
**arrest** [6] - 8:19, 13:20, 13:22, 13:23, 14:3
**assault** [3] - 8:20, 16:3, 18:17
**assume** [1] - 20:12
**attached** [1] - 8:11
**available** [1] - 11:21
**aware** [2] - 4:24, 5:21

## B

**bad** [3] - 13:17, 13:18, 18:9
**based** [12] - 5:11, 5:23, 6:12, 7:14, 7:25, 9:4, 9:16, 10:25, 11:10, 11:21, 14:9, 16:21
**basis** [2] - 14:11, 19:10
**beaucoup** [1] - 18:18
**became** [2] - 10:23, 16:10
**began** [1] - 16:13
**behalf** [1] - 22:14
**belief** [1] - 11:23
**believes** [1] - 10:7
**best** [3] - 20:9, 22:12, 22:13
**between** [3] - 6:15, 15:25, 19:1
**bit** [1] - 20:22
**bother** [1] - 23:2
**bringing** [1] - 8:3
**broad** [1] - 6:6
**bunch** [1] - 13:5
**burden** [1] - 11:5

## C

**cancel** [1] - 22:25
**cannot** [1] - 11:19
**car** [1] - 8:3
**case** [18] - 6:5, 9:23, 11:9, 12:23, 13:4, 13:11, 13:13, 15:14, 16:22, 17:2, 17:13, 18:16, 18:19, 20:5, 20:10, 20:16, 20:25, 21:5
**cases** [1] - 19:20
**cell** [2] - 8:6, 8:12
**certainly** [2] - 20:8, 22:12
**CERTIFICATE** [1] - 23:11
**certify** [1] - 23:12
**CFE** [3] - 9:24, 10:15, 10:25
**change** [1] - 12:4
**charge** [3] - 13:4, 16:6, 18:5
**charged** [1] - 13:5
**charges** [1] - 8:21
**child** [22] - 7:12, 7:21, 7:22, 8:1, 8:18, 8:20, 8:21, 9:14, 10:1, 10:8, 10:16, 13:4, 13:12, 15:22, 16:18, 16:24, 18:1, 20:2, 20:4, 20:11, 20:15
**children** [5] - 10:9, 13:13, 15:7, 20:13
**chiming** [1] - 12:2
**Circuit** [3] - 19:20, 20:7, 20:20
**circulates** [1] - 10:3
**circulation** [1] - 10:5
**circumstance** [2] - 4:21, 15:12
**circumstances** [3] - 7:25, 9:16, 19:9
**cites** [1] - 19:21
**clarify** [1] - 7:11
**clearly** [1] - 21:10
**client** [3] - 20:10, 22:14, 22:19
**client's** [1] - 21:25
**Clock** [1] - 12:2
**coming** [1] - 22:16
**common** [1] - 19:8
**common-sense** [1] - 19:8
**compared** [1] - 6:21
**complaints** [1] - 13:24
**completely** [2] - 8:10, 8:11
**computer** [2] - 8:7, 9:24
**computers** [1] - 18:21
**concluded** [1] - 23:9
**conduct** [2] - 5:22, 19:1
**conducting** [1] - 5:16
**conference** [3] - 22:16, 22:22, 22:24
**connect** [2] - 5:14, 16:6
**consider** [1] - 6:6
**contact** [1] - 10:14
**contention** [2] - 7:7, 7:8
**contents** [1] - 17:22
**continuous** [6] - 5:11, 6:5, 8:20, 13:3, 15:21, 15:22
**contraband** [1] - 19:12
**correct** [3] - 10:11, 11:12, 23:13
**counsel** [3] - 9:5, 13:20, 22:18
**counsel's** [2] - 11:4, 14:9

Concordance

**county** [1] - 13:5
**County** [7] - 9:3, 9:12, 10:13, 10:18, 11:1, 13:3, 19:16
**court** [1] - 15:25, 17:8, 18:6
**Court** [4] - 14:7, 20:7, 20:25, 21:23
**COURT** [38] - 4:17, 5:4, 5:20, 6:2, 7:3, 7:13, 7:16, 10:3, 10:6, 10:9, 11:14, 12:3, 12:12, 12:14, 12:19, 13:6, 13:16, 13:25, 14:5, 14:10, 14:16, 15:1, 15:4, 16:15, 16:23, 18:23, 19:1, 19:5, 19:23, 20:22, 21:6, 21:12, 22:8, 22:11, 22:21, 22:25, 23:5, 23:11
**Court's** [1] - 22:4
**cover** [1] - 22:21
**covered** [1] - 4:8
**covers** [1] - 4:14
**created** [1] - 6:14
**crime** [2] - 17:15, 19:12
**criminal** [2] - 13:23, 15:15
**CRR** [1] - 23:17

# D

**data** [2] - 6:11, 16:11
**date** [1] - 14:12
**Date** [1] - 23:10
**days** [1] - 14:1
**decision** [3] - 19:7, 19:8, 22:4
**defect** [1] - 15:16
**defendant** [3] - 8:1, 8:19, 20:4
**defendant's** [2] - 7:15, 20:8
**defense** [4] - 9:5, 11:4, 13:20, 22:18
**defense's** [1] - 7:7
**deficient** [6] - 9:12, 9:13, 15:5, 17:5, 18:22, 18:23
**deny** [2] - 18:10, 22:11
**department** [4] - 7:6, 8:17, 17:4, 17:21
**described** [1] - 13:11
**describes** [1] - 10:17
**detailed** [1] - 14:24
**determination** [3] - 11:7, 12:7, 13:23
**devices** [7] - 7:18, 7:19, 8:9, 8:15, 8:16, 8:17, 9:3
**different** [4] - 9:25, 10:12, 15:23, 18:5
**digital** [2] - 7:21, 16:18
**diligence** [2] - 12:10, 22:3
**disagree** [1] - 15:21
**discuss** [1] - 4:3
**discusses** [2] - 4:12, 18:1
**dispute** [1] - 18:13
**done** [1] - 13:8
**down** [3] - 11:3, 18:20, 20:22
**drive** [1] - 8:7
**drives** [1] - 18:21
**due** [3] - 12:4, 12:10, 22:3
**dunk** [1] - 17:24
**during** [1] - 21:19

# E

**effort** [2] - 19:17, 22:12
**either** [2] - 4:7, 14:16
**electronic** [4] - 7:18, 8:9, 9:3, 18:20
**electronical** [5] - 6:4, 6:9, 6:11, 16:5, 16:11
**elements** [1] - 15:23
**enforcement** [2] - 4:22, 5:7
**entire** [1] - 14:17
**entirely** [1] - 11:23
**entitled** [1] - 23:14
**equates** [1] - 15:22
**equipment** [1] - 16:5
**error** [2] - 14:11, 14:14
**establish** [1] - 4:23
**Etheridge** [4] - 4:12, 11:12, 11:16, 15:2
**ETHERIDGE** [19] - 5:5, 5:24, 6:3, 7:5, 8:13, 11:17, 12:5, 12:18, 15:3, 15:20, 16:21, 17:1, 18:24, 19:3, 20:18, 20:24, 21:8, 21:16, 22:10
**evidence** [8] - 7:18, 7:22, 9:14, 12:17, 15:10, 18:18, 19:12, 21:7
**evidentiary** [2] - 12:15, 12:20
**examiner** [1] - 9:24
**exception** [6] - 11:18, 11:19, 11:20, 14:8, 21:1, 22:5
**excludes** [1] - 14:7
**executed** [1] - 13:10
**existence** [1] - 11:23
**explain** [1] - 17:20

# F

**F-l-a-n-d-e-r-s** [1] - 19:24
**F-r-o-m-a-n** [1] - 19:25
**F.3d** [3] - 19:21, 19:25, 20:19
**fact** [4] - 4:13, 4:21, 7:24, 16:15
**factors** [1] - 22:4
**facts** [6] - 6:18, 7:25, 8:5, 9:16, 16:6, 18:4
**factually** [1] - 4:18
**fair** [1] - 19:11
**faith** [12] - 11:13, 11:18, 11:19, 13:17, 13:18, 14:8, 14:10, 14:22, 14:24, 20:21, 21:1, 22:5
**false** [3] - 21:4, 21:7, 21:9
**family** [1] - 16:17
**favorite** [1] - 15:15
**FBI** [3] - 8:23, 9:3, 17:4
**FBI's** [1] - 9:22
**February** [2] - 4:4, 5:25
**federal** [31] - 4:2, 4:11, 5:6, 5:7, 5:15, 6:19, 6:25, 8:25, 9:1, 9:2, 9:7, 9:10, 9:22, 10:20, 11:2, 11:5, 11:9, 11:11, 11:25, 12:6, 13:1, 13:14, 13:24, 14:23, 15:5, 15:6, 15:8, 15:17, 17:3, 20:6, 22:1
**Fifth** [3] - 19:20, 20:7, 20:20
**fighting** [2] - 5:12, 6:3

**figure** [1] - 14:9
**filed** [1] - 21:3
**filing** [1] - 14:9
**first** [8] - 6:15, 6:20, 7:4, 9:18, 10:24, 14:20, 18:4, 21:18
**five** [1] - 5:1
**flanders** [1] - 19:20
**Flanders** [2] - 19:21, 19:24
**fleshed** [1] - 14:2
**following** [1] - 5:21
**foregoing** [1] - 23:12
**forensic** [1] - 9:24
**forth** [1] - 19:9
**four** [2] - 20:20, 20:25
**Fourth** [3] - 21:13, 21:15, 21:25
**froman** [2] - 19:21, 19:25
**Froman** [1] - 19:23
**front** [1] - 15:19
**fruit** [1] - 7:8

# G

**gates** [1] - 19:7
**generally** [1] - 15:12
**given** [4] - 11:10, 15:18, 19:8, 21:17
**good-faith** [7] - 11:18, 11:19, 14:8, 14:10, 14:24, 21:1, 22:5
**government** [2] - 8:25, 15:17
**granted** [1] - 9:17
**great** [1] - 23:1
**grid** [1] - 8:11
**guarantee** [1] - 16:23
**Guerra** [6] - 10:14, 10:18, 10:21, 14:22, 18:12, 21:17
**guess** [2] - 21:8, 21:19

# H

**handle** [1] - 22:15
**handling** [1] - 13:3
**hard** [1] - 15:9
**hearing** [2] - 6:7, 12:21
**hold** [1] - 21:6
**home** [1] - 7:20
**homemade** [1] - 10:8
**Honor** [30] - 4:24, 5:5, 5:24, 6:4, 7:5, 7:11, 8:13, 11:17, 12:18, 12:23, 12:24, 14:18, 15:3, 15:20, 16:21, 17:20, 19:3, 19:4, 19:16, 20:17, 20:18, 20:20, 20:24, 20:25, 21:16, 22:9, 22:10, 22:15, 23:2, 23:8
**Honor's** [1] - 22:17

# I

**i.e** [2] - 6:18, 16:1
**idea** [2] - 8:5, 13:7
**identified** [1] - 20:25
**identities** [1] - 15:13
**identity** [1] - 15:14

Concordance

**Illinois** [1] - 19:6
**images** [5] - 10:2, 10:17, 13:12, 19:2
**important** [3] - 5:20, 11:24, 12:6
**inaccuracies** [2] - 4:12, 4:16
**inaccuracy** [2] - 4:1, 4:13
**inaccurate** [2] - 4:6, 6:2
**include** [1] - 4:20
**including** [1] - 19:10
**indicated** [4] - 6:8, 18:6, 20:20, 20:23
**indict** [1] - 14:1
**individual** [1] - 20:12
**individualized** [1] - 20:3
**informal** [1] - 6:7
**information** [9] - 4:5, 4:15, 10:25, 11:10, 15:19, 16:18, 19:11, 20:4, 21:3
**initial** [1] - 15:11
**intentionally** [1] - 18:14
**interest** [1] - 20:13
**interim** [1] - 15:9
**intrude** [1] - 21:13
**investigate** [1] - 9:23
**investigation** [8] - 5:16, 6:24, 10:22, 12:8, 13:1, 13:2, 21:19
**involved** [5] - 9:1, 10:21, 10:22, 10:23, 18:13
**irrelevant** [1] - 19:15
**issue** [2] - 7:8, 12:16
**issued** [8] - 7:15, 8:18, 9:12, 10:24, 13:10, 15:6, 15:9, 17:14
**issues** [1] - 12:25
**issuing** [1] - 21:2
**items** [9] - 4:9, 5:11, 5:17, 6:10, 7:9, 9:7, 16:1, 17:7, 17:9
**itself** [3] - 4:5, 7:20, 16:19

**J**

**Jacinto** [10] - 9:2, 9:6, 9:12, 10:13, 10:18, 11:1, 13:2, 13:18, 16:14, 19:16
**judge** [2] - 6:8, 18:8
**Judge** [2] - 9:16, 10:19

**K**

**kid** [1] - 17:10
**kids** [1] - 8:3
**kind** [2] - 6:19, 19:17
**kinds** [1] - 15:15
**knowledge** [1] - 19:10
**known** [2] - 4:21, 21:4
**knows** [1] - 10:12

**L**

**lab** [3] - 8:23, 9:3, 9:22
**lacking** [1] - 11:22
**language** [1] - 17:22
**Laura** [3] - 23:12, 23:16, 23:17
**law** [6] - 4:21, 5:6, 12:16, 20:5, 20:7, 20:10

**lay** [1] - 4:19
**learned** [1] - 5:17
**least** [3] - 6:22, 15:15, 18:16
**led** [1] - 4:11
**Leon** [1] - 11:20
**level** [3] - 8:21, 9:15, 14:23
**light** [1] - 22:17
**linens** [1] - 17:8
**listed** [1] - 21:10
**live** [1] - 8:8
**lives** [3] - 8:8, 8:9, 8:10
**look** [6] - 6:17, 7:21, 9:14, 9:19, 11:25, 17:25
**looked** [4] - 6:11, 6:20, 7:9, 17:19
**looking** [2] - 17:5, 19:6

**M**

**magistrate** [8] - 4:20, 6:6, 7:24, 8:4, 8:14, 14:25, 19:7, 21:2
**magistrates** [1] - 5:1
**March** [8] - 4:2, 4:8, 9:4, 9:5, 9:11, 9:21, 10:23, 23:10
**MARSHAL** [1] - 23:4
**matter** [2] - 19:18, 23:14
**mean** [6] - 4:18, 5:2, 8:9, 15:18, 18:17, 20:9
**meaning** [1] - 10:1
**meeting** [1] - 10:18
**meets** [1] - 22:6
**members** [1] - 16:17
**mention** [1] - 9:6
**mentioning** [1] - 7:4
**messed** [3] - 17:18, 18:16, 22:7
**might** [2] - 21:5, 21:22
**minutes** [1] - 5:1
**misguided** [1] - 19:17
**misinformation** [1] - 14:21
**misleading** [1] - 7:3
**misled** [5] - 5:6, 6:25, 11:13, 18:14, 21:2
**molestation** [5] - 7:19, 7:22, 8:2, 8:19, 10:23
**molester** [1] - 16:24
**molesting** [1] - 20:12
**motion** [3] - 14:19, 18:10, 22:12
**motivation** [1] - 19:15
**MR** [19] - 5:5, 5:24, 6:3, 7:5, 8:13, 11:17, 12:5, 12:18, 15:3, 15:20, 16:21, 17:1, 18:24, 19:3, 20:18, 20:24, 21:8, 21:16, 22:10
**MS** [25] - 4:18, 5:25, 7:11, 7:14, 7:17, 8:14, 10:4, 10:7, 10:11, 12:13, 12:22, 13:7, 13:17, 14:1, 14:6, 14:13, 14:18, 19:4, 19:6, 19:24, 22:9, 22:15, 22:23, 23:1, 23:7
**multiple** [1] - 15:12

**N**

**necessarily** [1] - 12:23
**necessary** [1] - 9:18
**need** [8] - 6:12, 6:23, 12:16, 14:3, 14:13, 18:3, 20:3, 22:20
**needed** [1] - 5:19
**nefarious** [1] - 13:22
**negate** [1] - 14:14
**negates** [1] - 14:17
**neglected** [1] - 17:3
**never** [6] - 5:1, 15:14, 16:14, 17:4, 17:25, 18:1
**nexus** [7] - 9:2, 15:25, 16:6, 17:12, 18:7, 18:24, 19:1
**nothing** [10] - 6:2, 9:8, 9:9, 16:5, 16:7, 17:10, 18:10, 18:17, 20:5, 22:23

**O**

**objective** [2] - 19:14, 19:19
**offense** [1] - 6:14
**offensive** [1] - 21:14
**office** [13] - 5:6, 5:17, 6:11, 6:14, 6:23, 6:25, 7:9, 16:9, 17:16, 18:14, 21:20, 21:24, 22:6
**Office** [1] - 9:7
**officer** [9] - 4:1, 5:8, 5:15, 6:20, 7:1, 9:22, 11:21, 11:25, 22:1
**officer's** [1] - 19:15
**once** [1] - 16:4
**one** [11] - 4:4, 4:7, 4:8, 4:14, 8:8, 14:11, 18:8, 19:14, 21:2, 21:10
**originally** [1] - 16:7
**outcry** [2] - 7:12, 7:14
**outside** [1] - 8:9
**overcome** [1] - 22:5
**overruled** [1] - 22:14
**own** [1] - 6:24

**P**

**p.m** [1] - 23:9
**panties** [2] - 16:2, 17:8
**part** [6] - 6:4, 13:18, 14:20, 18:16, 18:17, 18:19
**particular** [2] - 16:22, 19:13
**party** [1] - 8:2
**people** [5] - 8:8, 10:18, 13:19, 13:23, 14:23
**percent** [1] - 17:1
**permission** [2] - 9:17, 9:20
**person** [2] - 8:10, 19:11
**phone** [2] - 8:6, 8:12
**place** [1] - 19:13
**point** [15] - 5:7, 5:9, 5:18, 5:20, 6:10, 6:14, 8:25, 9:2, 9:22, 12:9, 16:12, 17:18, 21:17, 21:21, 22:6
**poisonous** [1] - 7:8
**pornography** [18] - 7:21, 7:23, 8:1,

8:18, 8:21, 9:14, 10:1, 10:8, 10:16, 13:12, 15:23, 16:19, 16:24, 18:1, 20:3, 20:4, 20:11, 20:15
 **position** [4] - 11:15, 15:1, 16:14, 20:9
 **possesses** [1] - 20:4
 **possession** [1] - 16:8
 **possibly** [1] - 22:15
 **practical** [2] - 8:4, 19:8
 **premises** [1] - 16:18
 **prepared** [1] - 12:22
 **presentation** [1] - 12:17
 **pretrial** [3] - 22:16, 22:21, 22:24
 **preview** [1] - 8:18
 **previewed** [1] - 9:7
 **probability** [2] - 19:12, 20:14
 **probable** [13] - 4:19, 4:23, 5:13, 6:3, 11:6, 11:22, 12:7, 13:22, 14:15, 14:19, 15:11, 16:25, 17:7
 **procedural** [1] - 15:16
 **proceeding** [1] - 13:6
 **proceedings** [2] - 15:15, 23:13
 **Proceedings** [1] - 23:9
 **process** [1] - 9:3
 **processing** [1] - 9:25
 **produced** [2] - 10:8, 10:16
 **production** [1] - 9:15
 **promotion** [1] - 9:14
 **protect** [1] - 21:14
 **protections** [1] - 21:13
 **provided** [1] - 10:25
 **punish** [1] - 21:23
 **put** [5] - 4:2, 4:25, 14:20, 17:22, 18:5

## Q

 **qualify** [1] - 7:22
 **questions** [2] - 5:9, 12:24

## R

 **rather** [1] - 22:16
 **RCFL** [3] - 4:9, 8:23, 9:21
 **read** [2] - 14:18, 21:9
 **reading** [3] - 5:2, 9:18, 22:2
 **realize** [1] - 21:22
 **realized** [7] - 5:18, 6:12, 6:22, 16:12, 17:18, 18:15, 22:7
 **really** [1] - 15:4
 **reasonably** [2] - 20:12, 21:4
 **rebut** [1] - 20:18
 **record** [1] - 23:13
 **recorded** [1] - 17:11
 **regards** [1] - 6:4
 **regular** [3] - 10:1, 10:16, 13:12
 **regurgitated** [2] - 6:18, 18:4
 **relatable** [1] - 16:3
 **reliance** [1] - 14:24
 **relied** [1] - 11:19
 **relies** [1] - 11:21

 **render** [1] - 11:22
 **renders** [1] - 19:15
 **REPORTER'S** [1] - 23:11
 **reports** [1] - 6:14
 **residence** [2] - 6:1, 7:15
 **residential** [2] - 4:10, 8:15
 **respond** [2] - 5:4, 19:4
 **review** [8] - 9:9, 9:22, 11:3, 11:5, 13:8, 16:11, 17:21, 18:2
 **reviewed** [6] - 7:24, 8:14, 8:22, 14:23, 16:9, 17:16
 **reviewing** [1] - 18:2
 **rights** [1] - 21:25
 **Riley** [2] - 6:12, 16:11
 **rise** [1] - 23:4
 **RMR** [1] - 23:17
 **Robert** [2] - 10:14, 10:21
 **rule** [1] - 14:8
 **ruling** [1] - 22:18
 **Russell** [3] - 9:24, 10:15, 10:17

## S

 **San** [10] - 9:2, 9:6, 9:12, 10:13, 10:18, 11:1, 13:2, 13:18, 16:14, 19:16
 **satisfies** [1] - 16:25
 **saw** [2] - 8:18, 13:11
 **search** [18] - 4:2, 4:6, 4:10, 4:11, 8:16, 8:24, 10:20, 11:2, 11:3, 11:6, 11:8, 11:11, 11:25, 13:14, 13:21, 16:18, 20:2
 **second** [23] - 5:19, 6:12, 6:16, 6:17, 6:21, 7:1, 7:10, 8:24, 9:4, 12:3, 12:14, 13:21, 16:10, 17:19, 17:22, 17:25, 18:3, 18:5, 19:18, 21:10, 21:11, 21:17
 **see** [2] - 15:4, 15:9
 **sees** [3] - 9:25, 10:1, 10:7
 **seized** [2] - 5:11, 6:10
 **sense** [1] - 19:8
 **sentence** [1] - 18:9
 **separate** [1] - 15:21
 **set** [2] - 19:9, 22:23
 **sets** [1] - 15:23
 **sexual** [8] - 5:12, 6:5, 8:20, 13:3, 15:22, 16:3, 18:17, 20:13
 **Sheriff's** [1] - 9:6
 **sheriff's** [17] - 5:6, 5:16, 6:10, 6:14, 6:23, 6:25, 7:6, 7:9, 8:17, 16:9, 17:4, 17:16, 17:20, 18:14, 21:20, 21:24, 22:6
 **shocking** [1] - 8:6
 **show** [1] - 20:3
 **side** [5] - 5:13, 6:9, 6:13, 16:2, 18:19
 **signed** [3] - 6:6, 14:25, 15:18
 **single** [1] - 4:21
 **sit** [2] - 11:3, 18:13
 **situation** [1] - 21:21
 **situations** [2] - 20:21, 20:25
 **slam** [1] - 17:24
 **slow** [1] - 20:22
 **sometimes** [1] - 12:1

 **Special** [5] - 10:14, 10:17, 14:22, 18:12, 21:17
 **specific** [2] - 12:25, 20:3
 **specifically** [1] - 7:17
 **spell** [1] - 19:23
 **Stacy** [1] - 10:19
 **standard** [2] - 19:14, 19:19
 **starts** [1] - 9:24
 **state** [24] - 4:3, 4:6, 4:8, 4:9, 4:10, 4:14, 5:13, 6:7, 6:9, 6:13, 8:21, 8:24, 9:15, 10:24, 11:3, 11:5, 12:9, 15:25, 16:2, 17:3, 17:8, 18:6, 18:8, 20:6
 **state's** [1] - 15:21
 **states** [1] - 21:10
 **still** [1] - 13:3
 **story** [1] - 15:7
 **stretch** [1] - 17:14
 **strive** [1] - 21:14
 **struggling** [1] - 15:4
 **stuff** [5] - 6:9, 6:11, 9:25, 10:4, 13:5
 **subjective** [1] - 19:15
 **submitted** [2] - 9:21, 14:25
 **subsequent** [1] - 7:6
 **sufficient** [1] - 16:17
 **suggests** [1] - 13:20
 **supplying** [1] - 19:11
 **supporting** [1] - 20:2
 **supposed** [2] - 13:8, 13:14
 **suppress** [3] - 6:8, 17:9, 18:7
 **Supreme** [1] - 20:7
 **sympathize** [1] - 20:8
 **system** [1] - 13:24

## T

 **taint** [1] - 16:13
 **terms** [1] - 14:11
 **THE** [38] - 4:17, 5:4, 5:20, 6:2, 7:3, 7:13, 7:16, 10:3, 10:6, 10:9, 11:14, 12:3, 12:12, 12:14, 12:19, 13:6, 13:16, 13:25, 14:5, 14:10, 14:16, 15:1, 15:4, 16:15, 16:23, 18:23, 19:1, 19:5, 19:23, 20:22, 21:6, 21:12, 22:8, 22:11, 22:21, 22:25, 23:4, 23:5
 **third** [1] - 8:2
 **three** [1] - 13:11
 **thumb** [1] - 18:20
 **Thursday** [2] - 22:17, 22:23
 **today** [3] - 8:8, 12:21, 22:16
 **took** [1] - 8:22
 **totally** [1] - 4:24
 **toward** [1] - 16:16
 **tragic** [2] - 15:12, 15:14
 **transcript** [1] - 23:13
 **tree** [1] - 7:8
 **trial** [1] - 22:19
 **tried** [1] - 14:9
 **true** [1] - 5:5
 **truly** [1] - 17:21

Concordance

**try** [1] - 18:19
**Tumlinson** [1] - 16:16
**two** [10] - 4:6, 4:14, 5:14, 9:25, 10:24, 11:8, 13:9, 13:12, 15:23, 19:6
**type** [2] - 8:10, 11:6
**types** [1] - 10:2

## U

**U.S** [6] - 6:12, 11:20, 16:10, 19:20, 19:21, 20:19
**uncontested** [1] - 13:9
**under** [5] - 16:10, 19:20, 20:7, 20:24, 22:3
**underlying** [5] - 5:8, 5:10, 6:5, 12:1, 12:11
**unless** [1] - 8:9
**unreasonable** [1] - 11:23
**up** [3] - 17:18, 18:16, 22:7
**US** [1] - 20:7
**USB** [1] - 8:7

## V

**values** [1] - 21:14
**veracity** [1] - 19:10
**victims** [3] - 10:9, 15:13
**videos** [2] - 16:8, 17:23
**view** [1] - 5:7
**viewed** [2] - 5:18, 8:2
**violation** [1] - 21:24
**voided** [1] - 15:11

## W

**warrant** [60] - 4:2, 4:3, 4:8, 4:19, 4:22, 5:1, 5:8, 5:10, 5:19, 5:22, 5:25, 6:6, 6:12, 6:15, 6:16, 6:18, 6:20, 6:21, 7:2, 7:4, 7:10, 7:15, 7:17, 8:15, 8:24, 9:4, 9:6, 9:12, 9:18, 10:20, 11:2, 11:11, 11:21, 11:25, 13:14, 13:22, 14:8, 14:20, 14:24, 15:5, 15:6, 15:8, 15:18, 16:1, 16:10, 17:14, 17:19, 17:23, 17:25, 18:3, 18:4, 18:5, 19:18, 20:2, 20:6, 21:10, 21:11, 21:18, 22:2
**warrants** [16] - 4:7, 4:14, 5:3, 5:12, 8:19, 10:24, 11:3, 11:6, 11:8, 13:9, 13:10, 13:21, 18:21, 20:6
**watch** [2] - 17:11, 18:9
**Wells** [3] - 23:12, 23:16, 23:17
**whole** [1] - 13:5
**whom's** [1] - 15:14
**witnesses** [1] - 15:2
**woerner** [1] - 20:19
**WOERNER** [1] - 20:19
**Woerner** [2] - 20:24, 22:3
**would've** [1] - 6:20

## Y

**young** [1] - 16:17

## Z

**Zack** [1] - 23:6
**ZACK** [25] - 4:18, 5:25, 7:11, 7:14, 7:17, 8:14, 10:4, 10:7, 10:11, 12:13, 12:22, 13:7, 13:17, 14:1, 14:6, 14:13, 14:18, 19:4, 19:6, 19:24, 22:9, 22:15, 22:23, 23:1, 23:7